**IT IS SO ORDERED.**

**Dated:  25 September, 2015 12:45 PM**

JESSICA E. PRICE SMITH
UNITED STATES BANKRUPTCY JUDGE

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

IN RE:                                          IN PROCEEDINGS UNDER CHAPTER 7

    BYRON JACKSON,                      CASE NO. 14-13977

        DEBTOR.

                              JUDGE JESSICA E. PRICE SMITH

## MEMORANDUM OF OPINION AND ORDER

The matter before the Court is an Order on Carlton House Condominium Unit Owners Association (Carlton House) to Appear and Show Cause why it should not be sanctioned for violation of the discharge injunction.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(O) with jurisdiction further conferred pursuant to 28 U.S.C. § 1334 and General Order No. 2012-7 of this District.  After conducting an evidentiary hearing on the matter, examining the evidence admitted, and reviewing the record, the following factual findings and conclusions of law are rendered:

The Debtor, Byron Jackson, is a member of Carlton House Condominium Unit Owners Association by virtue of his ownership of a condominium unit. He filed a Chapter 7 petition on June 19, 2014. (Doc. No. 1). Debtor filed for bankruptcy, in part, to save his residence from a pending foreclosure initiated by the mortgage lien holder. *See Countrywide Home Loans Inc., v. Byron Jackson et al*, CV-08-647135. Liens held by Bank of America, NA and Carlton House encumbered the property which, based on the Cuyahoga County Auditor's Appraisal, is valued at $53,500.00. (Doc. No. 12). Carlton House held liens junior to the mortgage in the amount of $52,162.10. (Doc. No. 30, Exhibit H). On June 27, 2014, Bank of America and Debtor entered into a loan modification agreement increasing the principal of Debtor's mortgage from $44,000 to $90,703.02. (Doc. No. 24). The Court approved the loan modification on August 29, 2014. (Doc. No. 39).

Debtor's personal obligation for the debt to Carlton House was discharged on December 9, 2014. The final decree was issued on December 17, 2014. On the date of the final decree, Carlton House filed the pleadings necessary to schedule a sheriff's sale of Debtor's condominium in the pre-petition foreclosure action. That sale was set for February 9, 2015.

On January 21, 2015, Debtor filed a Motion to Vacate/Stay the Sheriff's Sale. (Doc. No. 93). A hearing on that motion and the objection to the motion was held on January 28, 2015. Debtor alleged that the association failed to credit all post-petition payments to his account. Carlton House, through its counsel, stated that Debtor had expressed no intent to resolve the payment issue, and that it was its policy to reject current payments without a payment arrangement, because there was a foreclosure pending. Based on these statements, the Court granted the Motion to Reopen (Doc. No. 98) and issued an Order on Carlton House to Appear

and Show Cause why it should not be sanctioned for violation of the discharge injunction (Doc. No. 100).

The Court scheduled an evidentiary hearing on the show cause order for February 6, 2015. Counsel for Carlton House appeared at the evidentiary hearing without a representative from her client, or any other witness. The Court entered an order finding that Carlton House had failed to appear, and holding it in contempt based on its failure to explain how refusing to accept payment and proceeding with a foreclosure sale because Debtor did not enter into a payment arrangement for a discharged debt, was not a violation of the discharge injunction. On oral motion of counsel, the Court vacated that order and granted a request to continue the hearing. The matter was rescheduled for March 3, 2015 and counsel was advised that her client was required to attend the evidentiary hearing. The Court also advised counsel that the issue in this matter was whether the in rem state court action being prosecuted by Carlton House was in fact a disguised in personam action.

In Response to the Show Cause Order, Carlton House argues that it did not violate the discharge injunction because: 1) it is proceeding in rem; 2) it accepted voluntary payments; and 3) it did not demand or solicit payment. (Doc. No. 101). Carlton House further argues that because it is entitled to foreclose on the pre-petition liens, its intent in scheduling the foreclosure sale is irrelevant.

At the Evidentiary Hearing, witnesses for Carlton House established that Debtor's failure to pay the discharged obligation burdened fellow unit owners and created a deficiency in the repair and maintenance fund. It was also established that the management company had collected some payments from Debtor post-petition, but could not confirm that it credited all payments that he submitted. The billing statements submitted as evidence by Carlton House

3

show a post-petition delinquency of $3,300.76 as of February 11, 2015. (Exhibit A). The Court also took notice of a billing statement dated through March 1, 2015 with a balance of $5,138.65. The statements included charges in the amount of $802.95 in attorney fees from December 2014 which included costs associated with the pre-petition foreclosure, and $1,323.70 in attorney fees from January 2015 for the cost of defending Carlton House against the request to reopen the case and for the within show cause action.

The admitted statements also show payments applied to Debtor's account in the amounts of $480.59, $522.61, and $474.10. (Exhibit A). They established that the $474.10 payment submitted by Debtor in early September 2014, was not applied until November 2014, and the Debtor was charged a late fee. (*Id;* Exhibit G). Debtor testified that the statements fail to account for two additional payments made. In support, he produced evidence of a $482.89 payment mailed on February 28, 2015. Debtor alleges he made a payment in the amount of $474.10 in October 2014 but that he no longer has documentation of the transaction. In total, Debtor alleges he made $2,434.29 in post-petition payments.

## ANALYSIS

The issue before the Court is whether Carlton House violated the discharge injunction when it scheduled a sheriff's sale of Debtor's residence post-discharge and charged Debtor for attorney's fees associated with the sale. The foreclosure action was pending prior to the filing of the within Chapter 7 bankruptcy. Carlton House's position is that because it retained a valid lien against the residence, it had a right to continue the foreclosure action in order to satisfy its claim as against the property. Although Carlton House has the right to foreclose on its lien, it cannot use the foreclosure process to coerce Debtor to enter into a payment plan for the

4

discharged obligation.  It also did not have the right to add the legal fees incurred in the pre-petition foreclosure to Debtor's current account for them to be paid.

Once a chapter 7 debtor fulfills his obligations under the Bankruptcy Code, he receives a discharge.  11 U.S.C. § 727; *In re Amir*, 436 B.R. 1, 10 (B.A.P. 6th Cir. 2010) (". . . the chapter 7 discharge releases the debtor from all personal liability for his debts").  The discharge prohibits attempts to collect pre-petition debts by imposing "an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).  The injunction is in keeping with the purpose of the bankruptcy code to provide the debtor a fresh start.  *In re Miller,* 247 B.R. 224, 228 (Bankr.E.D.Mich.2000), *aff'd,* 282 F.3d 874 (6th Cir.2002) (citing *Green v. Welsh,* 956 F.2d 30, 33 (2d Cir.1992)).

While a debtor's personal obligations are discharged, valid liens, unless avoided, remain effective against the debtor's property.  *In re Jarrett*, 293 B.R. 127, 131 (Bankr. N.D. Ohio 2002).  When liens survive bankruptcy, section 524 prohibits actions against the debtor in personam but allows actions against the debtor's property in rem.  *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991); *In re Jarrett*, 293 B.R. at 13.  Whether a violation of the discharge injunction of § 524 occurred turns on if a creditor acted solely in rem, or instead acted against the debtor in his personal capacity.  When proceeding in rem, creditors must recognize that

> Congress designed and intended the permanent injunction 'to give complete effect to the discharge, . . .  to eliminate any doubt concerning the effect of the discharge as a total prohibition on debt collection efforts, . . .  and . . .  to insure that once a debt is discharged, the debtor will not be pressured in any way to repay it.'

5

*In re Latanowich,* 207 B.R. 326, 334 (Bankr.D.Mass.1997) (citing S.Rep. No. 989, 95th Cong., 2nd Sess. 80–81 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5866).

For a finding of contempt, a court must find by clear and convincing evidence that a creditor knew of the discharge and intended the actions violating the injunction. *In re Holley*, 473 B.R. 212, 215 (Bankr. E.D. Mich. 2012) *aff'd,* No. 12-13088, 2013 WL 791549 (E.D. Mich. Mar. 4, 2013) (quoting *In re Frambes,* No. 08–22398, 2012 WL 400735, at *5 (Bankr.E.D.Ky. Feb. 7, 2012)). Carlton House does not dispute that it knew of Debtor's discharge. It also intentionally filed the pleading to have the sheriff's sale scheduled. Therefore, the question is whether Carlton House was proceeding with the foreclosure action to satisfy the debt from the sale of the condominium unit, or in order to force Debtor to repay the debt.

Debtor filed the within Chapter 7 while the foreclosure action was pending. In order to retain the property, valued at $53,500 in the Cuyahoga County Auditor's Appraisal, Debtor entered into a loan modification with Bank of America. The loan modification resolved the mortgage holder's claim in the foreclosure action, created a first lien against the property in the amount of $90,703.02, and created an obligation for which Debtor remained personally liable after his discharge. It did not however, resolve the $52,162.10 claim of Carlton House, which remained a lien against the property, although there was no equity to which it could attach.

Within hours of entry of the final decree in this Chapter 7, Carlton House took action to schedule the sale of Debtor's condominium unit. At the Evidentiary Hearing on the show cause order, witness testimony established that Debtor's discharge from his obligation to pay the pre-petition debt to Carlton House left it with inadequate funds to make repairs to the property. In fact the testimony presented by Carlton house centered on Debtor's failure to pay the past due

amounts and the fact that deficient accounts prevented the Association from making necessary repairs.

Reviewing the testimony of witnesses, and noting that none of Carlton House's witnesses stated that replacing Debtor with a paying unit owner was a motivating factor in scheduling the sheriff's sale, the Court finds that Carlton House scheduled the sale of the condominium unit in order to obtain the funds it needed to maintain and repair the property. The Court further finds that based upon the auditor's appraisal and the value of the first mortgage, Carlton House, through its counsel, knew that sale of the unit in the foreclosure would not provide the funds necessary to pay the outstanding obligation. As stated by counsel, Debtor expressed no intent to resolve the payment issue. But, by scheduling the sheriff's sale, Debtor is compelled to resolve the issue by entering into payment arrangements for the discharged debt, or lose his home. Based on these facts, I find that Carlton House scheduled the foreclosure sale in order to induce Debtor to pay a debt for which he is no longer personally liable.

According to witness testimony and the documents presented by Carlton House, attorney fees in the amount of $802.95, in connection with scheduling the sheriff's sale in December, were charged to Debtor post-petition. (*See* Exhibit A.) In *Siegel v. Fed. Home Loan Mortgage Corp*, the court noted circumstances in which discharging post-petition attorney fees arising from pre-petition contracts would be proper. 143 F.3d 525, 533 (9th Cir. 1998). When the possibility of a claim against the debtor was fixed and entirely out of his hands before he entered bankruptcy and liability was contingent upon what others might do, the debt is discharged. *Id.* Here, the attorney fees charged to Debtor were not incurred by his initiating new, post-petition litigation on pre-petition claims of Carlton House. Rather, Carlton House incurred the fees through the scheduling of the sheriff's sale in the pre-petition

7

foreclosure.  Fees incurred in scheduling the sale should have been charged against the property, not billed to Debtor.  Section 524 prohibits offsetting the costs of collecting discharged obligations by placing those costs on the debtor.  11 U.S.C. § 524(a)(2).  Accordingly, billing Debtor for those fees is a violation of the discharge injunction.

Violations of the discharge injunction are remedied through findings of contempt. *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 422 (6th Cir. 2000).  While this section of the Code does not explicitly authorized monetary relief, a court does have the authority to award actual damages for a violation based on the court's contempt power.   11 U.S.C. § 105(a); *Hardy v. United States (In re Hardy)*, 97 F.3d 1384, 1389 (11th Cir. 1996); *see also In re Miller,* 247 B.R. at 228 ("[t]his Court agrees that a debtor who is injured by a willful violation of the discharge injunction is entitled to damages . . . Otherwise the discharge injunction would be essentially without meaning or effect").

Here, sanctions are appropriate to credit Debtor for payments that were tendered but not credited and to prevent Carlton House from charging Debtor for attorney fees incurred to recover the discharged debt.  Accordingly, Debtor is awarded $802.95 to offset the cost of the attorney fees charged to him post-petition for scheduling the sale.  Carlton House produced evidence of only three payments applied to Debtor's account.  Debtor is awarded $482.89 for the February payment, which was not credited on his account.  The Court finds Debtor's testimony as to the missing October payment credible and Debtor is awarded $474.10 for that payment.  Debtor is also awarded $25 for the late fee applied to that month.  The total amount of the sanction is $1,784.94.   Carlton House alleges a delinquency of $3,300.76 due from Debtor as of February 11, 2015.  The sanctions awarded herein shall be an offset against Debtor's post-petition obligation to Carlton House, not a payment to him.

It is further ordered that Carlton House may not charge Debtor for any of the fees incurred in connection with the Motion to Vacate/Stay the Sheriff's Sale or the Court's show cause order, including, but not limited to, fees incurred for responses filed and hearings attended in connection with those pleadings. Accordingly, the $1,323.70 for attorney fees in the March 1, 2015 statement shall be removed from Debtor's account. Carlton House may not proceed with any further action to prosecute the pre-petition foreclosure or the attendant sale.

## <u>CONCLUSION</u>

The Court finds that Carlton House's scheduling the sheriff's sale and charging attorney fees as addressed herein were actions in personam against Debtor and violate the discharge injunction imposed by 11 U.S.C. § 524(a)(2).

**IT IS SO ORDERED**